UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X

KISSONE FREDERICK,

                    *Petitioner*,

            -*against*-

UNITED STATES OF AMERICA,

                    *Respondent*.

--------------------------------X

**MEMORANDUM & ORDER**

14-cv-4216(KAM)

**KIYO A. MATSUMOTO, United States District Judge:**

On July 14, 2014 *pro se* petitioner Kissone Frederick
("petitioner"), currently incarcerated at USP Big Sandy in Inez,
Kentucky, filed this petition for a writ of *habeas corpus*
pursuant to 28 U.S.C. § 2255.  (ECF No. 1, Motion to Vacate, Set
Aside or Correct Sentence ("Pet. Mot.").)  Petitioner challenges
his conviction for multiple counts of robbery in violation of
the Hobbs Act on the grounds that he did not receive effective
assistance of counsel in violation of the Sixth Amendment of the
United States Constitution, the trial court provided improper
jury instructions to the jury, and that he is actually innocent
of one of the crimes for which he was convicted.  For the
following reasons, the court finds petitioner's claims are
without merit and denies his petition.

**BACKGROUND**

Petitioner's conviction and the instant *habeas* petition relate to two armed robberies, one attempted and one completed, that occurred in Brooklyn, New York on May 14, 2006. On April 24, 2009, a federal grand jury returned a six-count indictment charging defendant and others with a conspiracy to commit Hobbs Act armed robbery, attempted Hobbs Act armed robbery, Hobbs Act armed robbery, and three related weapons charges. (*United States of America v. Kissone Frederick*, No. 09-cr-258 (KAM) ("Criminal Case"), ECF No. 1, Indictment.)[1] Specifically, Count Two of the Indictment charged petitioner with using a firearm in an attempt to rob a retail store known as Satellite Communications, in violation of the Hobbs Act, 18 U.S.C. § 1951(a). (*Id.* Count Two.) Count Four charged petitioner with the completed robbery of another retail store known as Card Corner, also in violation of the Hobbs Act. (*Id.* Count Four.) Given petitioner's prior felony conviction, his alleged use of a firearm in connection with a robbery and attempted robbery resulted in additional charges. (*Id.* Count Three (18 U.S.C. § 924(c)(1)(A)(i)), Count Five (18 U.S.C. § 924(c)(1)(A)(ii)), Count Six (18 U.S.C. §§ 922(g)(1), 924(a)(2)).)

---

[1]     Unless noted otherwise, all citations to "ECF No. _" refer to the electronic docket in Case No. 14-cv-4216.

Petitioner was also charged by the Kings County prosecutor in New York State Court for crimes relating to the completed armed robbery of Card Corner described in Count Four of the Indictment, but was not prosecuted in connection with the attempted robbery of Satellite Communications described in Count Two. (Criminal Case, ECF No. 10, Government Motion *in Limine*, 3.) On October 3, 2007, petitioner pleaded guilty in New York State Court to a lesser-included offense of attempted robbery in the second degree in full satisfaction of all state charges. (*Id.*) Following petitioner's state conviction, the government received authorization from the Department of Justice under the *Petite* Policy to prosecute the petitioner in federal court. (*Id.*)[2] Petitioner was subsequently indicted by a federal grand jury. (*See generally* Indictment.)

Petitioner was represented at the plea and trial stages by Ephraim Savitt, Esq. ("Savitt"). (Pet. Mot. 10.) Savitt remained petitioner's counsel in the Criminal Case until July 14, 2010, when petitioner requested new counsel. (Criminal

---

[2] Under the *Petite* policy, the Department of Justice endeavors to reduce the incidence of "same offense" prosecutions by pursuing federal prosecution "based on substantially the same act(s) or transaction(s)" previously prosecuted in state court only if the first prosecution left a "substantial federal interest . . . demonstrably unvindicated" and a Department senior official authorizes the prosecution. *Gamble v. United States*, 139 S. Ct. 1960, 1995, 204 L. Ed. 2d 322 (2019) (citing Dept. of Justice, Justice Manual § 9-2.031(A) (rev. July 2009)).

Case, Minute Entry dated July 14, 2010.) The court initially appointed Dawn M. Cardi, Esq. as CJA counsel to represent petitioner in the Criminal Case, but one week later, Joyce C. London, Esq. ("London") replaced Ms. Cardi as petitioner's criminal counsel. (Criminal Case, Minute Entry dated July 21, 2010.) London represented petitioner during his sentencing in the Criminal Case and on appeal. (*See generally* Criminal Case.)

Petitioner's four-day jury trial commenced on December 7, 2009. (Criminal Case, Minute Entry dated Dec. 7, 2009.) During petitioner's trial, the government offered extensive testimony by a cooperating witness and co-conspirator who was the getaway driver for the robberies, video surveillance footage and victim witness testimony providing direct evidence that a firearm was used or possessed in connection with the attempted Satellite Robbery, and petitioner's sworn statements made in state court during his guilty plea to attempted robbery in the second degree for the Card Corner robbery. *See United States v. Frederick*, No. 09-CR258(KAM), 2010 U.S. Dist. LEXIS 58560, at *3-8 (E.D.N.Y. June 14, 2010); *United States v. Frederick*, 702 F. Supp. 2d 32, 38 (E.D.N.Y. 2009).

At trial, the parties stipulated that retail store Satellite Communications "engaged in interstate commerce and sold a variety of items including cellular telephones and cellular telephone products that were manufactured outside of

4

the State of New York" and that retail store Card Corner Three likewise "was engaged in interstate commerce and sold a variety of items, including greeting cards, that were manufactured outside the State of New York." (Criminal Case, ECF No. 132-2, Trial Transcript ("Tr.") 470-71.)[3]

On December 9, 2009, after the parties' closing arguments, but prior to jury deliberations, the court learned that a juror ("Juror Number Eight") had reportedly expressed concern for his own safety and that of his fellow jurors to the courtroom deputy. (Tr. 578.) Juror Number Eight's reported concern was apparently precipitated by an exchange between the petitioner and individuals associated with the petitioner situated in the courtroom's rear, and while the court and counsel were occupied in a sidebar. (*See* Criminal Case, ECF No. 44, Juror Concern Ltr. 1; *see also* Tr. 578-79 ("[AUSA Carter] Burwell: I was informed by a colleague from the United States Attorney's Office who said that after argument when we came up for a sidebar, the defendant was making a lot of gestures toward his - - who I believe to be friends and family and that caught [Juror Number Eight's] attention.").) At sidebar, the parties and the undersigned registered concern that Juror Number Eight may have expressed his concerns in the presence of other jurors.

---

[3]     The Trial Transcript is filed on the docket as ECF Nos. 132, 132-1, 132-2, and 132-3, corresponding to four trial dates, December 7, 2009 through December 10, 2009, respectively.

(*See* Tr. 584.) The government proposed the court conduct a
brief *voir dire* hearing to inquire whether Juror Number Eight
made any statements, whether the juror discussed safety concerns
with fellow jurors, and whether Juror Number Eight's concerns,
if any, would impact his ability to be fair and impartial.
(Juror Concern Ltr. 1.)

On the morning of December 10, the court held a closed
*voir dire* hearing with counsel and summoned Juror Number Eight
to appear. (Tr. 612.) Petitioner was present as well. (*Id.*
608:14.) At the hearing, Juror Number Eight testified to the
undersigned that he had indeed reported certain misgivings to
the courtroom deputy about the presence of individuals in the
courtroom gallery at petitioner's trial. (*Id.* 614.) Juror
Number Eight informed the court that his concerns were not based
on any specific gestures or statements, that he had confined his
comments solely to the courtroom deputy, and that he had no
doubt that he could perform his duty as a juror to render a
verdict fairly and impartially based only on the evidence and
the law. (*Id.* 615-16, 620.) Juror Number Eight also confirmed
that he had not shared his concerns with other jurors, and that
no other jurors had shared similar concerns with him. (*Id.*
621.) Petitioner's counsel, Savitt, nonetheless requested that
the court excuse Juror Number Eight "in the excess of caution,"
(*id.* 623), notwithstanding Savitt's concession that Juror Number

Eight had likely provided candid testimony to the court. (*Id.* 622.) The court granted Savitt's request, excused Juror Number Eight, and replaced him with an alternate juror. (*Id.* 632-33.)

Later on December 10, 2009, the undersigned charged the jury with instructions, which had been discussed at a charging conference, and following deliberations, the jury returned a verdict convicting petitioner on all six counts of the Indictment. (*Id.* 633-84, 698-99.)[4] On June 19, 2012, the petitioner, now represented by London, was sentenced to 32 years in custody, based on statutory mandatory minimums of 25 years pursuant 18 U.S.C. § 924(c)(1)(C)(i), and 7 years pursuant to 18 U.S.C. § 924(c)(1)(A)(ii). (Criminal Case, ECF No. 121, Minute Entry dated June 19, 2012; *id.*, ECF No. 123, Judgment; *see also id.*, ECF No 127, Sentencing Transcript 20:11, 36:5-8.) On June 26, 2012, London filed a notice of appeal to the Second Circuit on behalf of petitioner. (*Id.*, ECF No. 125, Notice of Appeal.) On May 24, 2013, the Court of Appeals issued a mandate affirming the trial court's judgment. (*Id.*, ECF No. 134, USCA Mandate.)

---

[4]     The government subsequently moved to dismiss Count Six of the Indictment because petitioner was not apprised prior to trial of the possibility that he could be deemed an Armed Career Criminal under the ACCA if he were convicted of Count Six for being a felon in possession of a firearm, and that such a designation would subject the defendant to a mandatory 15-year sentence under 18 U.S.C. § 924(e)(1). (Criminal Case, ECF No. 113, Memorandum & Order Denying Def.'s Rule 33 Motion for New Trial, 51-52; *id.*, ECF No. 120, Order Granting Motion to Dismiss Count Six.)

## PROCEDURAL HISTORY

On July 14, 2014, petitioner filed the present petition to vacate, set aside, or correct his sentence and conviction. (Pet. Mot.) Petitioner brings this petition on seven grounds, five of which are claims of ineffective assistance of counsel. Specifically, petitioner asserts he received ineffective assistance of counsel from:

(1) London, for her failure to appeal petitioner's robbery conviction on double jeopardy grounds;

(2) London, for her failure to raise jury contamination claims on appeal;

(3) Savitt, for his failure to secure petitioner's presence during the "voir dire, in camera hearing of juror number 8";

(4) London, for her failure to bring an ineffective assistance of counsel claim against Savitt for his stipulation to the interstate commerce element of petitioner's Hobbs Act offenses;

(5) Savitt and London, respectively, for failing to raise the proper cooperating witness jury instruction during trial, and for failing to appeal petitioner's conviction on the basis of an improper cooperating witness jury instruction.

In addition, petitioner claims that:

(6) the court's aiding and abetting jury instruction created a structural error by lowering the government's burden of proof; and

(7) he is actually innocent of the sentence he received for brandishing a firearm.

(*See generally id.*)

Petitioner also requested that the court order London to submit an affidavit responding to petitioner's claims of ineffective assistance of counsel. (*Id.* at 20, 24.) On August 21, 2014, the court issued an order instructing London and Savitt to respond to petitioner's allegations within 30 days of the date of the order and requiring the government to show cause why petitioner's motion should not be granted. (ECF No. 3, Order to Show Cause, ¶¶ 1-2.) London and Savitt filed responses to the Order to Show Cause on September 19, 2014 and December 12, 2014, respectively, contesting petitioner's claims that they provided ineffective assistance of counsel. (ECF No. 4, London Decl.; ECF No. 7, Savitt Ltr.)

On January 28, 2015, the government filed its response to petitioner's motion, arguing that neither Savitt nor London rendered ineffective assistance of counsel, that petitioner's claims regarding the alleged improper jury instructions are hopelessly vague, and asserting petitioner is not innocent of brandishing a firearm. (*See generally*, ECF No. 10, Gov. Opp.) On April 23, 2015, petitioner filed his reply. (ECF No. 12, Petitioner's Traverse ("Pet. Reply").)

There was no activity on the docket for approximately one year following petitioner's response until May 6, 2016, when petitioner filed a letter requesting that the court expedite judgment in the instant case, as petitioner has not "heard

anything for a year." (ECF No. 15, Petitioner's Ltr.)  From

June 2016 through September 2019, there were various delays and

updates in the case due to pending Second Circuit and Supreme

Court decisions that petitioner believed would affect his

petition.

First, on June 9, 2016, an Assistant Federal Defender

assigned to petitioner's case informed the court of petitioner's

intent to amend his motion to include claims of due process

violations at conviction and sentencing, pursuant to *Johnson v.*

*United States*, 135 S. Ct. 2551 (2015).  (ECF No. 17, Fed.

Defender Ltr.)  On October 20, 2017, the court then ordered that

the government file a response to the Federal Defenders' June 9,

2016 letter.  (Order dated Oct. 20, 2017.)

Second, on October 24, 2017, petitioner filed a

consent motion to stay proceedings in light of a pending

rehearing petition for the Second Circuit's decision in *United*

*States v. Hill*, 832 F.3d 135 (2d Cir. 2016).  The consent motion

asserted that, in light of *Johnson*, petitioner's convictions on

Counts Three and Five, for violations of 18 U.S.C. § 924(c),

should be vacated since "Hobbs Act robbery . . . no longer

qualifies as a 'crime of violence.'"  (ECF No. 20, Consent Mot.

1.)[5]  Citing the Second Circuit's acknowledgement in *Hill* that

---

[5]      Petitioner argued that in light of *Johnson*, his convictions on the §
924(c) counts should be vacated because Hobbs Act robbery no longer qualifies

there was a deep circuit split on the issue of whether *Johnson* invalidated the residual clause in 18 U.S.C. § 924(c), the consent motion explained that the continued validity of *Hill*, and the Supreme Court's then-pending decision in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), could potentially vacate petitioner's convictions on Counts Three and Five of the Indictment. (*Id.* 1-2.)

The court granted the motion to stay, and the parties were ordered to advise the court of the Second Circuit's disposition of *Hill* within two business days of the court's final decision and how the parties wished to proceed. (Order dated Oct. 25, 2017.) On May 17, 2018, following the Second Circuit's amended opinion in *United States v. Hill*, 890 F.3d 51, 52 (2d Cir. 2018), *cert. denied*, 139 S. Ct. 844 (2019), the court ordered the parties to file a letter advising as to how they intended to proceed. (Order dated May 17, 2018.) On May 18, 2018, the parties filed another consent motion to stay petitioner's case pending the Federal Defenders' amended motion in *Hill* for a rehearing or rehearing *en banc*. (ECF No. 21, Consent Motion (2nd) 2.) The court granted the parties' motion and continued the stay. (Order dated May 18, 2018.)

---

as a "crime of violence," which is an essential element of the charged § 924(c) crime. (*Id.*)

Third, on September 6, 2018, petitioner filed a motion to stay pending the resolution of another Second Circuit case, *United States v. Barrett*, No. 14-2641, involving the related question of whether attempted Hobbs Act robbery qualifies as a crime of violence under § 924(c). (ECF No. 22, Motion to Stay 3.) The court denied the motion; however, by consent of the parties, the court ordered that the stay remain in effect until the Second Circuit issued a mandate in the *Barrett* case. (Order dated Sept. 18, 2018.)

On April 3, 2019, the court ordered the parties to file a joint status report as to how they intended to proceed. (Order dated Apr. 3, 2019.) On April 5, 2019, petitioner sought leave to voluntarily dismiss his *Johnson*-based claims without prejudice, and requested that the court proceed with petitioner's remaining claims, originally filed *pro se*. (ECF No. 24, Ltr. Requesting Dismissal.) The court granted petitioner's request and lifted the stay, deeming the petitioner's motion ripe for adjudication. (Order dated May 8, 2019.)

Then, on September 16, 2019, petitioner moved to amend his motion to challenge his § 924(c) convictions in light of *Barrett*'s holding that, pursuant to the Supreme Court's decision in *United Sates v. Davis*, 139 S.Ct. 2319 (2019), Hobbs Act conspiracy is not a crime of violence, which led the *Barrett*

court to vacate a § 924(c) conviction premised on conspiracy to commit Hobbs Act robbery. (ECF No. 26, Motion to Amend.) The court nevertheless denied petitioner's motion to amend, and noted that the Second Circuit in *Barrett* had affirmed the defendant's other counts of conviction under § 924(c) that were based on the predicate offense of substantive Hobbs Act robbery. (Order dated Oct. 15, 2019.) Because petitioner's two counts of conviction pursuant to § 924(c) were predicated on his two counts of substantive Hobbs Act robbery, and not his single count of conspiracy to commit Hobbs Act robbery, *Barrett's* holding would not relieve petitioner from his § 924(c) convictions and sentence, rendering an amendment futile. (*Id.*)

Therefore, what remains for the court's review are petitioner's original *pro se* claims that pre-date his June 9, 2016 amendment.

<div align="center">**LEGAL STANDARD**</div>

A prisoner in federal custody may challenge the validity of his sentence by petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence on the basis "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. §

2255(a); *Reisman v. United States,* No. 12-CV-291, 2013 WL
5774592, at *3 (E.D.N.Y. Oct. 24, 2013) (citing *Adams v. United
States,* 372 F.3d 132 (2d Cir. 2004)). Collateral relief from a
final judgment is available only "for a constitutional error, a
lack of jurisdiction in the sentencing court, or an error of law
or fact that constitutes 'a fundamental defect which inherently
results in a miscarriage of justice.'" *United States v. Bokun,*
73 F.3d 8, 12 (2d Cir.1995) (quoting *Hill v. United States,* 368
U.S. 424, 428, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962)). The grounds
for relief under § 2255 are limited out of "respect for the
finality of criminal sentences, the efficient allocation of
judicial resources, and an aversion to retrying issues years
after the underlying events took place." *Davis v. United
States*, No. 13-CR-986, 2019 WL 1533073, at *2 (S.D.N.Y. Apr. 9,
2019) (quoting *Bokun*, 73 F.3d at 12).

Section 2255 petitions must be filed in the district
court "which imposed the sentence" being challenged. 28 U.S.C.
§ 2255(a). Additionally, prisoners may not use Section 2255 as
a substitute for a direct appeal. *Marone v. United States,* 10
F.3d 65, 67 (2d Cir. 1993) (citing *United States v. Frady,* 456
U.S. 152, 165 (1982)). Generally, with the exception of
ineffective assistance claims, "a claim may not be presented in
a habeas petition where the petitioner failed to properly raise
the claim on direct review." *Zhang v. United States,* 506 F.3d

162, 166 (2d Cir. 2007) (citation omitted). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States,* 523 U.S. 614, 622 (1998) (citations omitted).

Further, it is well established that Section 2255 may not be used to litigate issues that have been decided adversely to a defendant on direct appeal. *United States v. Sanin,* 252 F.3d 79, 83 (2d Cir. 2001); *see Reese v. United States,* 329 F. App'x 324, 326 (2d Cir. 2009); *United States v. Natelli,* 553 F.2d 5, 7 (2d Cir. 1977) (per curiam) ("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under section 2255."). "[A] petitioner may bring an ineffective assistance of counsel claim [in a petition pursuant to Section 2255] whether or not the petitioner could have raised the claim on direct appeal." *Mui v. United States,* 614 F.3d 50, 54 (2d Cir. 2010) (citing *Massaro v. United States,* 538 U.S. 500, 509 (2003)).

In reviewing the instant petition, the court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007)

(internal quotation marks and citations omitted); *Williams v. Kullman,* 722 F.2d 1048, 1050 (2d Cir. 1983) (noting that courts should review *pro se habeas* petitions with a lenient eye). Accordingly, the court is obliged to interpret petitioner's pleadings as raising the strongest arguments they suggest. *Harris v. Mills,* 572 F.3d 66, 72 (2d Cir. 2009); *Martin v. United States,* 834 F. Supp. 2d 115, 119 (E.D.N.Y. 2011) (citing *Williams,* 722 F.2d at 1050).

In ruling on a motion under § 2255, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). A hearing is not required where the allegations are "vague, conclusory, or palpably incredible." *Machibroda 131 v. United States*, 368 U.S. 487, 495 (1962). Therefore, to warrant a hearing, the motion "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle him to relief." *Gonzalez v. United States*, 722 F.3d 118, 131 (2d Cir. 2013).

## DISCUSSION

Petitioner filed the instant petition for a writ of *habeas corpus* to vacate his conviction for violations of 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c). Petitioner brings the writ on seven grounds, five of which are for his counsels'

alleged ineffective assistance during trial and on appeal, one

for alleged improper jury instruction by the court, and one for

alleged actual innocence of his sentence of brandishing a

firearm.  The government argues that petitioner's claims are

vague and conclusory, thereby meriting no *habeas* relief pursuant

to 28 U.S.C. § 2255.  For the reasons stated below, the petition

is DENIED.

## I.    Ineffective Assistance of Counsel

The Sixth Amendment protects the right of a criminal

defendant "to have the Assistance of Counsel for his defense."

U.S. Const. amend. VI.  The Constitution thus requires that a

defendant receive "effective assistance of counsel."  *McMann v.

Richardson,* 397 U.S. 759, 771 (1970). In considering ineffective

assistance of counsel claims, the Second Circuit has held that a

defendant "need establish only that he has a 'plausible' claim

of ineffective assistance of counsel, not that 'he will

necessarily succeed on the claim.'"  *Puglisi v. United

States,* 586 F.3d 209, 213 (2d Cir. 2009) (quoting *Armienti v.

United States,* 234 F.3d 820, 823 (2d Cir. 2000)).

In *Strickland v. Washington,* 466 U.S. 668 (1984), the

Supreme Court articulated a two-prong test to determine whether

an attorney has provided ineffective assistance of counsel.  "A

[petitioner] claiming ineffective assistance must (1)

demonstrate that his counsel's performance 'fell below an

objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." *Grant v. Woods*, 313 F. App'x 376, 377 (2d Cir. 2009) (citing *Strickland*, 466 U.S. at 688, 693) (citations omitted).  The *Strickland* standard is both "highly demanding," and "rigorous." *Kimmelman v. Morrison,* 477 U.S. 365, 382 (1986); *Lindstadt v. Keane,* 239 F.3d 191, 199 (2d Cir. 2001).

The petitioner bears the burden of proving that both *Strickland* prongs are met.  *Byrd v. Evans,* 420 F. App'x 28, 30 (2d Cir. 2011) (citing *Kimmelman,* 477 U.S. at 381).  In considering the performance prong, a court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Strickland,* 466 U.S. at 689.  Petitioners are tasked with overcoming "the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* (quoting *Michel v. Louisiana,* 350 U.S. 91, 101 (1955)).

Under the prejudice prong, courts consider "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.  To establish prejudice, a petitioner must demonstrate that "there is a reasonable probability that, absent the errors, the factfinder would have

had a reasonable doubt respecting guilt." *Henry v. Poole,* 409 F.3d 48, 63–64 (2d Cir. 2005) (quoting *Strickland,* 466 U.S. at 695). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694. Where, as here, a petitioner challenges his sentence, "the petitioner must show that but for counsel's ineffectiveness, there is a reasonable probability that the sentence imposed would have been different." *Martin,* 834 F. Supp. 2d at 126 (citing *United States v. Workman,* 110 F.3d 915, 920 (2d Cir. 1997)).

When faced with an ineffective assistance of counsel claim, the court must treat the allegation seriously and determine whether a hearing is warranted. Under Section 2255, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." *Chang v. United States,* 250 F.3d 79, 84 (2d Cir. 2001) (citing 28 U.S.C. § 2255). A court need not hold a full evidentiary hearing if the defendant's assertion is unsupported by the trial record and, as is the case here, flatly contradicted by a detailed affidavit from his trial lawyer. *Id.* at 86; *Burkhardt v. Bradt*, No. 12-CV-1919 (ADS),

2016 WL 7017363, at *10 (E.D.N.Y. Dec. 1, 2016) ("Section 2255 does not require 'a full-blown testimonial hearing' when the district court can solicit written submissions sufficient to adequately supplement the record."). (*See* Savitt Ltr.; London Decl.) Where there is sufficient evidence, the court is not required to engage in "the delay, the needless expenditure of judicial resources," and the other burdens of a fruitless hearing. *Chang*, 250 F.3d at 86*; Lang v. United States,* No. 02-CR-1444, 2009 WL 4788430, at *2 (S.D.N.Y. Dec.9, 2009).

### a. **London's Decision Not to Appeal on Double Jeopardy Grounds**

Petitioner claims that his state and federal convictions are for the same offense, and therefore, London provided ineffective assistance as petitioner's trial counsel by failing to raise a double jeopardy claim on appeal. (Pet. Mot. 1-6.) However, petitioner's claim fails because his state and federal convictions were not for the "same offense" according to the standard set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The Fifth Amendment's Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. Amend. V. Pursuant to *Blockburger*, "where the same act or transaction constitutes a violation of two distinct statutory provisions,

the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. at 304 (citing *Gavieres v. United States*, 220 U.S. 338, 342 (1911)). "[T]he critical double jeopardy inquiry is not factual, *i.e.*, whether the same conduct is at issue in charges brought under different statutes, but legal, *i.e.*, 'whether the 'offense'—in the legal sense, as defined by Congress-complained of in one count is the same as that charged in another.'" *See also United States v. Basciano*, 599 F.3d 184, 198 (2d Cir. 2010) (quoting *United States v. Chacko*, 169 F.3d 140, 147 (2d Cir. 1999)). "Multiple counts based on identical facts, but different elements of law, will not violate the double jeopardy clause." *United States v. Walker*, 314 F. Supp. 3d 400, 408 (E.D.N.Y. 2018) (citing *Gavieres*, 220 U.S. at 342).

Applying the standards established by *Blockburger* and *Basciano*, it is clear that defendant's federal prosecution for Hobbs Act robbery, conspiracy, and attempt, as well as the federal firearm charge, 18 U.S.C. § 924(c), penalized different conduct than the state charge on which petitioner was convicted. Petitioner pleaded guilty in state court to attempted robbery in the second degree in violation of New York Penal Law §§ 160.10(1) and 110.00. (London Decl. ¶ 4.) A conviction for attempted robbery in the second degree requires proof beyond a

reasonable doubt that defendant attempted[6] to (1) forcibly steal property and that (2) he was "aided by another person actually present." N.Y. Penal Law § 160.10(1).

Petitioner was charged and convicted in federal court for Hobbs Act robbery, as well as conspiracy and attempt to commit Hobbs act robbery. To convict a defendant under the Hobbs Act, the government must prove beyond a reasonable doubt that the defendant "obstruct[ed], delay[ed], or affect[ed] commerce or the movement of any article or commodity in commerce," by robbery, extortion, or attempt or conspiracy to do the same. 18 U.S.C. § 1951(a). "Commerce" refers to interstate commerce, as well as commerce within the District of Columbia or federal territories. *Id.* § 1951(b)(3). Thus, petitioner's convictions for Hobbs Act robbery, conspiracy, and attempt each required the government to prove a nexus with respect to interstate commerce that his conviction for attempted robbery under New York law did not. Likewise, petitioner's conviction under 18 U.S.C. § 924(c) required the government to prove that petitioner used, carried, or possessed a firearm in furtherance of a crime of violence. 18 U.S.C. § 924(c)(1)(A). A conviction for second degree robbery in New York, much less attempt, does not require the use, carriage, or possession of a firearm, but only the use or

_____

[6] "A person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime." N.Y. Penal Law § 110.00.

threatened immediate use of physical force.  *See People v. Lawrence*, 141 A.D.3d 828, 830, 35 N.Y.S.3d 742, 745 (N.Y. App. Div. 2016).  Further, neither § 924 nor Hobbs Act robbery, conspiracy, or attempt, require proof that petitioner was "aided by another person actually present."  N.Y. Penal Law § 160.10(1).

Accordingly, the court finds that the statutory provision underlying petitioner's state conviction and federal convictions each require proof of a fact that the other does not, and that petitioner's federal prosecution did not run afoul of the Double Jeopardy Clause.  London claims that she did not assert a double jeopardy argument on appeal because she did not believe "there was a viable factual basis for a post-conviction claim that the federal indictment presented a double jeopardy issue."  (London Decl. ¶ 4.)  Given the comparison of the federal and state provisions at issue, the court agrees.  Thus, London's decision not to appeal petitioner's conviction on double jeopardy grounds did not fall below an objective standard of reasonableness.  Nor did her failure to bring such a claim prejudice petitioner, as such a claim would have been futile.

In addition, petitioner's reliance on *United States v. Mills*, 412 F.3d 325 (2d Cir. 2005), is misplaced.  Petitioner argues that he had a right to counsel "prior to the admission of the charges at the federal level even though he had plead[ed]

guilty in the State Court with different counsel," and, therefore, where counsel attaches, his guilty plea at the state level should not have been admitted into evidence at the federal level. (Pet. Reply 3-4.) In *Mills*, the Second Circuit held that statements obtained in violation of a defendant's right to counsel in state proceedings must be suppressed in federal proceedings as well where the two proceedings are for the "same offense." *Id.* at 327. The panel construed the term "same offense" in accord with the *Blockburger* standard, and reasoned that since "Sixth Amendment violations are offense specific . . . evidence obtained in violation of the Sixth Amendment is not admissible in subsequent prosecutions for the 'same offense' as defined by *Blockburger*." *Id.* at 330.

Petitioner does not appear to be arguing, least of all meritoriously, that the statements he made in his state court guilty plea violated his Sixth Amendment right to effective assistance of counsel. In any event, because petitioner's state and federal proceedings were not for the same offense, as defined by *Blockburger*, petitioner's argument is unavailing.

b. **London's Decision Not to Seek a New Trial Based on Jury Contamination**

Petitioner claims that London rendered ineffective assistance of counsel by failing to raise a motion for a new trial in light of the "jury contamination" that resulted from

Juror Number Eight's comments.  (Pet. Mot. 7.)  Petitioner
contends that excusing Juror Number Eight was insufficient to
cure the prejudice caused by "the comment, and demeanor the
juror had at the time, which spread in the eyes, ears and minds
of the other jurors during the trial."  (*Id.*)  London states in
her declaration that she did not believe there to be a viable
argument for a new trial based on Juror Number Eight's
statements, and that her review of the *voir dire* hearing
transcript "did not reveal a factual basis for challenging"
Savitt's conduct.  (London Decl. ¶ 6.)

        In *Remmer v. United States,* the Supreme Court stated
that "[i]n a criminal case, any private communication, contact,
or tampering, directly or indirectly, with a juror during a
trial about the matter pending before the jury is, for obvious
reasons, deemed presumptively prejudicial." 347 U.S. 227, 229
(1954).  The presumption is not, however, conclusive, and the
"burden rests heavily upon the Government to establish . . .
that such contact with the juror was harmless to the defendant."
*Id.*  Where there are concerns regarding jury contamination, "the
trial court should not decide and take final action *ex parte* . .
., but should determine the circumstances . . . in a hearing
with all interested parties permitted to participate."  *United
States v. Ianniello*, 866 F.2d 540, 543 (2d Cir. 1989) (quoting
*Remmer*, 347 U.S. at 229-30).  Further, "the duty to investigate

[jury contamination] arises only when the party alleging misconduct makes an adequate showing of extrinsic influence to overcome the presumption of jury impartiality." *Id.* In order to succeed in a motion for a post-trial jury hearing, a party must therefore present "clear, strong, substantial and incontrovertible evidence . . . that a specific, non-speculative impropriety has occurred." *United States v. Sun Myung Moon*, 718 F.2d 1210, 1234 (2d Cir. 1983) (citing *King v. United States*, 576 F.2d 432, 438 (2d Cir.), *cert. denied*, 439 U.S. 850 (1978)).

Petitioner supports his claim of jury contamination with prolix citation to the December 9, 2009 transcript of counsel's side bar, during which the court and the parties discussed Juror Number Eight's reported comments. (Pet. Mot, ECF pp. 47-49 (citing Tr. 582-84).) Petitioner does not otherwise identify any portion of the transcript excerpt, or any other specific allegations, that would suggest Juror Number Eight's reported comments "spread in the eyes, ears and minds of the other jurors during the trial." (Pet. Mot. 21.) But to the extent this concern was raised at sidebar on December 9, it was assuaged the following day, in the petitioner's presence, at the December 10 *voir dire* hearing in which Juror Number Eight gave clear and unequivocal testimony that he had not discussed his concerns with any other juror:

THE COURT: All right.  Do you have any reason to believe
that any of your fellow jurors share any of your concerns?

THE JUROR: No.

THE COURT: Has anyone else discussed this or articulated
such a concern in your presence?

THE JUROR: No.

THE COURT: Have you discussed this with any other juror?

THE JUROR: No.

. . .

THE COURT: All right. Well, sir, again I would just direct
you not to discuss this with anybody.

THE JUROR. I won't.

(Tr. 621-22.)

Savitt found Juror Number Eight's testimony to be
"entirely candid," but nevertheless requested the court excuse
Juror Number Eight "in the excess of caution" to avoid potential
prejudice to petitioner.  (*Id.* 622-23.)  Following Juror Number
Eight's removal, the court addressed the remaining jurors by
informing them that Juror Number Eight had been excused, asking
by show of hands if they could be fair and impartial, and if
there were any other concerns the jurors harbored.  (*Id.* 633-
34.)  No hands were raised.  (*Id.* 634.)

Petitioner proffers no other facts, such as affidavits
from the other jurors, to demonstrate that there was jury
contamination.  If London were to have made this claim on
appeal, petitioner would have had to substantiate his claim, and
courts in the Second Circuit have consistently refused to allow

a defendant to investigate "jurors merely to conduct a fishing expedition." *Ianniello*, 866 F.2d at 542 (quoting *United States v. Moten*, 582 F.2d 654, 667 (2d Cir. 1978)). Accordingly, petitioner has not demonstrated that London's failure to move for a new trial on appeal based on alleged jury contamination rendered her performance unreasonable.

### c. Savitt's Failure to Secure Petitioner's Presence During the *In Camera* Hearing of Juror Number Eight

Relatedly, petitioner argues that Savitt rendered ineffective assistance of counsel by failing to secure petitioner's presence at the "voir dire in Camera hearing" of Juror Number Eight. (Pet. Mot. 11.) However, the trial transcript indicates that petitioner *was* present during the December 10, 2009 *voir dire* hearing:

> (The following takes place out of the presence of the jury.)
>
> THE CLERK: . . . Please state your appearances.
>
> . . .
>
> THE DEFENDANT: Good morning.
>
> . . .
>
> THE COURT: . . . Let me just say this, we have asked Juror Number Eight to be held downstairs in the central jury room, he's not in the jury room with the other jurors, specifically for the purpose of conducting a voir dire of this juror which we can do here in open court, unless anyone has an objection about that.
>
> . . .
>
> (Juror Number Eight enters courtroom.)

(Tr. 608-12.)

Petitioner appears to actually be arguing that he should have been present during the December 9, 2009 sidebar, where the court and parties first addressed Juror Number Eight's reported comments, and not the December 10, 2009 *voir dire* hearing.  This inference is supported by petitioner's claim that had he "been present and heard the courtroom deputy say 'the other jurors were present,'. . . he would have asked counsel Mr. Savitt to have the courtroom deputy bring out all the jurors that were exposed to juror number 8's utterance of fear by serving." (Pet. Mot. 11.)  This quote is drawn from transcript of the December 9, 2009 sidebar, (Tr. 584:23-24), not the *voir dire* hearing.  Therefore, interpreting petitioner's *pro se* motion "liberally" and construing his contentions "to raise the strongest arguments presented," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), the court will address petitioner's claim that he should have been present during the sidebar.

"Due process requires that a defendant be present at all stages of the trial 'to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only.'" *United States v. Rosario*, 111 F.3d 293, 298 (2d Cir. 1997) (quoting *Snyder v. Massachusetts,* 291 U.S. 97, 108 (1934)). Rule 43 of the Federal Rules of Criminal Procedure codifies this right, and provides that a criminal defendant shall be present "at every stage of the trial."  Fed. R. Crim. P. 43(a); *see also*

*Rogers v. United States*, 422 U.S. 35, 38-39 (1975) (a criminal defendant has the right to be present from the time that a jury is impaneled until it is discharged after rendering the verdict). However, a defendant's right to be present may be waived, either expressly or implicitly. *United States v. Fontanez*, 878 F.2d 33, 36 (2d Cir. 1989); *see also* Fed. R. Crim. P. 43(c)(1)(A). Defendant's waiver must be made both knowingly and voluntarily. *United States v. Reiter,* 897 F.2d 639, 642 (2d Cir. 1990).

A criminal defendant may be found to have knowingly and voluntarily made an implied waiver of the right to be present through his conduct. *United States v. Peterson*, 385 F.3d 127, 138 (2d Cir. 2004) (criminal defendant waived right to be present at judge's meeting with a juror since defense counsel and defendant did not object before the judge met with the juror nor after the meeting was completed); *United States v. Jones*, 381 F.3d 114, 122 (2d Cir. 2004) (finding that defendant waived his right to be present from an in chambers hearing because he did not raise an objection, despite having the opportunity to do so and "neither he, nor his old counsel, or his new counsel raised the issue until" appeal); *Cohen v. Senkowski*, 290 F.3d 485, 491 (2d Cir. 2002) (criminal defendant waived his right to be present "because neither he nor his counsel objected to his absence from the pre-screening" of jurors).

The trial transcript supports the inference that petitioner waived his right to be present during the December 9, 2009 sidebar:

> THE COURT: Okay. Maybe – I don't know if your client has a right to be here during these discussions –
>
> MR. SAVITT: I'll give him a synopsis of what we're discussing but it seems to me that, you know, this is a critical portion of the trial.
>
> THE COURT: It is very critical.
>
> MR. SAVITT: And he really should be present for these discussions.
>
> THE COURT: Yes.
>
> . . .
>
> MR. SAVITT: And I'm not objecting to the side-bar at all because I will advise my client about our discussion right now.

(Tr. 599.)

The colloquy between the court and Savitt, and the relevant facts of petitioner's case, virtually mirror the fact pattern in *Zaire v. Mitchell*, No. 93 CIV. 6626 (MBM), 1996 WL 82391 (S.D.N.Y. Feb. 27, 1996). In *Zaire*, the court denied a § 2254 *habeas* petition that alleged violations of petitioner's Sixth and Fourteenth Amendment rights based on his non-presence at a sidebar during *voir dire*. *Id.* at *1-2. The court held that the petitioner had waived his right to be present at the sidebar because his counsel was at the sidebar, petitioner was present at trial when the sidebar occurred, and neither he nor his counsel objected to his absence from the sidebar. *Id.* at

*2.  Here, petitioner's counsel was at the sidebar, petitioner
was present at trial, and neither he nor his counsel expressly
objected to his non-appearance at the sidebar.  Savitt also
explicitly stated that he was "not objecting to the side[]bar at
all," because he would advise petitioner of what occurred during
the sidebar.  Petitioner thus knowingly and voluntarily waived
his right to be present at the December 9, 2009 sidebar, and
Savitt's performance at the sidebar conformed to an objectively
reasonable standard of conduct.

Further, petitioner's argument that his non-presence
at the sidebar was prejudicial strains all credulity and is
belied by his actual conduct.  Petitioner claims that had he
been present at the sidebar, he would have asked Savitt to "have
the courtroom deputy bring out all the jurors that were exposed
to juror number 8's utterance of fear by serving on the jur[y].
Petitioner would have then asked Counsel to sequester each juror
and call them one by one and inquire whether they can still set
[*sic*] impartial after hearing juror number 8's utterance."
(Pet. Mot. 11-12.)  Petitioner was present during the actual
*voir dire* hearing of Juror Number Eight, which captured the
substance of Juror Number Eight's comments, and thus, the
underlying issues discussed at the December 9 sidebar.  Juror
Number Eight explicitly denied making any remarks to anyone
about his concerns.  There is no indication that after Savitt

advised petitioner about what transpired at sidebar, petitioner asked Savitt to have the courtroom deputy bring out all the jurors, as he now claims he would have had he been present during the sidebar.

Assuming petitioner *had* asked Savitt to conduct a *voir dire* of each juror, Savitt's failure to adhere to such a request likely would not have been prejudicial. In fact, the government and Savitt credibly contend that individual questioning of other jurors would have likely caused greater prejudice to petitioner. (Savitt Ltr. 3 ("The Court was correct in reaching the conclusion that it is best not to tamper with an offhand remark by one juror to a courtroom deputy because an individualized inquiry of all the jurors would have actually instilled fear where none was evident."); Gov. Opp. 3-6 (citing Savitt Ltr.); *see also* Juror Concern Ltr. 3 ("The government believes . . . there is no need for the Court to conduct individual *voir dire* of any of the other members of the jury. To the extent that a statement made by the juror could have affected another juror, the Court's Final Jury Instructions may be the most appropriate place to resolve that concern.") (citation omitted).) The court agrees that the approach ultimately taken—excusing Juror Number Eight and confirming that the remaining jurors did not consider their ability to render a fair and impartial verdict compromised—allowed the issue to be "diffused gently and

appropriately." (Savitt Ltr. at 3.) Thus, petitioner has failed to adequately demonstrate prejudice under *Strickland*.

### d. London's Failure to Appeal on the Basis of Savitt's Stipulation to Interstate Commerce Element

At trial, Savitt stipulated that both the Satellite Communications and Card Corner retail stores were "engaged in interstate commerce," (Tr. 470), a necessary element of Hobbs Act robbery that the government has the burden of proving beyond a reasonable doubt. *See* 18 U.S.C. § 1951(a). Petitioner argues that London provided ineffective assistance of counsel by failing to raise an ineffective assistance of counsel claim against Savitt for his decision to stipulate to the interstate commerce element necessary to prove a violation of Title 18 U.S.C. § 1951. (Pet. Mot. 15-16.)

To reiterate, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel*, 350 U.S. at 101). Therefore, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.* at 690. Cases in this circuit that have

decided ineffective assistance of counsel claims[7] have held that decisions made by defense counsel regarding stipulations constitute "reasonable trial strateg[ies]." *United States v. Berkovich*, 168 F.3d 64, 68 (2d Cir. 1999) (finding that because defense counsel was also able to benefit from a stipulation, the stipulation was part of a reasonable trial strategy.); *Chen v. United States*, No. 03-CR-734-4 (DAB), 2016 WL 519617, at *6 (S.D.N.Y. Feb. 3, 2106) (finding that petitioner failed to demonstrate that counsel's failure to object to a certain stipulation was objectively unreasonable).

Petitioner has failed to articulate even a single reason why Savitt's stipulations were objectively unreasonable. London states that, based on her "legal research on the interstate commerce element and [her] review of the trial record," she "did not believe there was a viable argument that the items stolen during the course of the charged conduct had such an insignificant effect on interstate commerce as to not establish that element." (London Decl. ¶ 8.) According to London, she made a "tactical decision" not to pursue a claim of ineffective assistance of counsel against Savitt for stipulating

---

[7]    Ineffective assistance of counsel claims in this circuit, for both purposes of *habeas* petitions and direct appeals, use the same two-pronged test from *Strickland*.   *See United States v. Nersesian*, 824 F.2d 1294, 1320 (2d Cir. 1987).

that the targets of petitioner's attempted and completed robberies were engaged in interstate commerce.  *Id.*

Petitioner claims he did not know or understand that Savitt made the stipulation, and baldly asserts that but for the stipulation the charges against petitioner "would have been dropped."  (Pet. Mot. 16.)  Petitioner was present, however, when Savitt made the stipulation, and he did not object at the time.  Petitioner does not claim that Savitt never informed petitioner of Savitt's intention to stipulate.  Moreover, petitioner fails to articulate any basis to doubt the contents of the stipulations themselves, *i.e.*, that the retail stores in question were not actually engaged in interstate commerce.  At bottom, it appears Savitt acted like most "[e]xperienced defense attorneys" who "routinely stipulate to undisputed facts in order to maintain credibility with the jury when challenging other aspects of the prosecution case."  *United States v. Gaskin*, 364 F.3d 438, 469 (2d Cir. 2004).

Petitioner has failed to demonstrate that either Savitt's or London's conduct fell below an objectively reasonable standard or that, but for Savitt's stipulation or London's decision not to appeal on the basis of Savitt's decision to stipulate, the charges against him actually "would have been dropped."  Accordingly, petitioner's claim that London rendered ineffective assistance of counsel on appeal by failing,

in turn, to claim that Savitt rendered ineffective assistance of counsel by stipulating to the interstate commerce element of the Hobbs Act, fails.

### e. Informant Jury Instruction

Petitioner's fifth ineffective assistance of counsel argument arises from Savitt's purported "fail[ure] to raise the proper informant jury instruction" at trial, and London's failure to assert Savitt's alleged failure as a basis for appeal. (Pet. Mot. 23.) Petitioner contends that there was no proper informant jury instruction that would instruct the jury to pay special attention to a cooperating individual because they may have incentives to "fabricate a story in return for freedom." (*Id.* 25.) The court cannot discern whether petitioner is claiming no instruction was given at all, or that the instruction actually given was defective. If petitioner asserts the former, his contention is patently wrong, as the excerpts below demonstrate. If petition asserts the instruction was defective, then his claim is belied by precedent.

The record reflects that all draft jury instructions were posted on the docket, affording counsel the opportunity to discuss and raise objections to the instructions at a charging conference, (*see* Tr. 91-99, 353-71), including the following instruction regarding the only cooperating witness at trial, filed on the docket on December 8, 2009:

**Testimony of Cooperating Witnesses**

> You have heard the testimony of Garreth Hickman, who
> testified under an agreement with the government…Under that
> agreement, Mr. Hickman agreed to testify and the government
> promised not to further prosecute him in a federal court
> for his criminal conduct . . . [Y]ou should bear in mind
> that a witness who has entered into such an agreement has
> an interest in this case different from any ordinary
> witness.  A witness who realizes that he may be able to
> avoid further prosecution for his criminal conduct by
> giving testimony favorable to the prosecution may have
> motive to testify falsely.  Therefore, you must scrutinize
> his testimony with caution and weigh it with great care.

(Criminal Case, ECF No. 43, Jury Instructions Draft 9.)

At trial, the court charged the jury with a substantially identical instruction, but went beyond the draft excerpt cited above by equipping the jury with suggested questions with which to probe and critically assess the veracity of the cooperator's testimony:

> You should ask yourselves whether the witness would
> benefit more by lying, or by telling the truth. Was his
> testimony made up in any way because he believed or hoped
> that he would somehow receive favorable treatment by
> testifying falsely? Or did he believe that his interests
> would be best served by testifying truthfully? If you
> believe that the witness was motivated by hopes of personal
> gain, was the motivation one which would cause him to lie,
> or was it one which would cause him to tell the truth? Did
> this motivation color his testimony? If, after examining
> his testimony, you decide to accept it, you may give it
> whatever weight, if any, you find it deserves.

(Tr. 645-47.)

The court's instruction in petitioner's criminal case comports with the standard in this circuit for cautionary instructions concerning cooperating witnesses.  In *United States*

*v. Vaughn*, the Second Circuit considered the propriety of the

following jury charge regarding a cooperator that had testified

against the defendant-appellant:

> There has been evidence that Winston Barnett, who testified
> at this trial, lied under oath at another proceeding. The
> testimony of Winston Barnett should be viewed cautiously
> and weighed with great care. However, it is for you to
> decide how much of his testimony, if any, you wish to
> believe.
>
> You have heard testimony about an agreement between the
> government and a witness, Winston Barnett. It is no concern
> of yours why the government made an agreement with Winston
> Barnett. Your sole concern is whether Winston Barnett has
> given truthful testimony here in this courtroom before you.
>
> In evaluating the testimony of Winston Barnett, you should
> ask yourselves whether he would benefit more by lying or by
> telling the truth. If, after scrutinizing his testimony,
> you decide to accept it, you may give it whatever weight,
> if any, you find it deserves.

430 F.3d 518, 521 (2d Cir. 2005). Then-Circuit Judge Sotomayor,

writing for the panel, acknowledged that "[a] more detailed . .

. cooperating witness instruction would not have been improper,"

and might have been prudent, *id.* at 524, but stopped short of

mandating that trial courts "do more than convey to the jury

that the testimony of cooperating witnesses should be subjected

to scrutiny in terms of their possible motivations, particularly

where defense counsel argues to the jury that a cooperating

witness's interest in the case bears on his or her credibility."

*Id.* at 523. The instruction in petitioner's case went beyond

the bar set by *Vaughn*. The court provided the jury with

suggested questions in order to assist the juror with thoroughly scrutinizing the cooperator's testimony and gauging the witness's truthfulness.

In light of *Vaughn*, the petitioner cannot support his claim that the jury was charged with an improper cooperating witness instruction. The court also credits London's assessment that appealing on the basis of the court's instruction would have been futile. Accordingly, the court finds that both London and Savitt's performance adhered to the standards set by *Strickland*, and that the court's instruction was not prejudicial to petitioner. Petitioner's fifth ineffective assistance of counsel claim thus fails.

## II. Improper Aiding and Abetting Jury Instruction

Petitioner claims that the trial court's jury instruction with respect to aiding and abetting "shifted" the government's burden of proof, thereby creating a "structural error." (Pet. Mot. 17-18.) The government contends that petitioner has "fail[ed] to articulate how this alleged burden shifting occur[ed] and cites to no law contravening the Court's 'aiding and abetting' instruction." (Gov. Opp. 5.) The court agrees.

Petitioner argues that the court's instruction improperly shifted the government's burden of proof by stating

that "the state of mind intent by Petitioner did not have to be proven in order to find him guilty." (Pet. Mot. 18.) Petitioner purports to quote the court's instruction to the jury in his motion, but a review of the transcript reveals that petitioner's entire argument rests on his omission from the court's actual jury charge, which states:

> It is important for you to understand what is and is not sufficient to make one an aider and abetter. To find a defendant guilty as an aider and abettor of a crime, you must find that the government has proven beyond a reasonable doubt that some person actually did commit the crime charged . . . *You must then determine whether the defendant knowingly and willfully sought by his actions to make any of those crimes succeed. I have already instructed you on what it means to act knowingly and willfully, and you should apply those definitions.*

(Tr. 671-72 (emphasis for text omitted from petitioner's proffered charge).)

As is clear from the text of the court's actual jury charge with respect to aiding and abetting liability, the court did instruct the jury that they had to find the government proved petitioner had the requisite state of mind. Petitioner's claim thus lacks any basis in law or fact and does not warrant relief.

**III. Actual Innocence**

Finally, the court addresses petitioner's claim that he is actually innocent of "brandishing a firearm" in violation of 18 U.S.C. § 924(c). During sentencing, the court noted that

according to *Harris v. United States*, 536 U.S. 545 (2002),

brandishing "need not be alleged in the indictment submitted to

the jury, or proved beyond a reasonable doubt."  (Criminal Case,

ECF No. 127, Sentencing Tr. 21.)  The court found that the

evidence at trial clearly established that petitioner brandished

a firearm in connection with the attempted robbery at Satellite

Communications and that petitioner should be subject to a seven-

year mandatory minimum consecutive sentence, instead of the five

year mandatory minimum.  (*Id.* 20.)

Petitioner bases his claim of innocence on the recent

Supreme Court decision in *Alleyne v. United States*, 570 U.S. 99

(2013), (*see* Pet. Mot. 21-23), which overruled *Harris*, and held

that "facts that increase mandatory minimum sentences must be

submitted to the jury."  *Alleyne v. United States*, 570 U.S. 99,

117 (2013).  The government contends the Supreme Court's

decision in *Alleyne* does not apply retroactively to cases on

collateral review in the absence of any express statement of

retroactive application by the Supreme Court.  (Gov. Opp. 6.)

The Second Circuit's decision in *United States v.

Redd*, 735 F.3d 88 (2d Cir. 2013), conclusively resolves the

parties' dispute in the government's favor.  In *Redd*, the

petitioner filed a § 2255 *habeas* petition claiming that the

district court violated the principle espoused by *Alleyne* when

it found by a preponderance of the evidence that the type and

42

quantity of drugs involved in the petitioner's cocaine offense warranted an increased mandatory minimum sentence. *Id.* at 89. The Second Circuit explained that there are two categories of new rules that may have retroactive effect: "[1] new substantive rules that place 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe'; [2] and new procedural rules that 'are implicit in the concept of ordered liberty.'" *Id.* at 91 (citations and quotations omitted). The Second Circuit found that the rule promulgated from *Alleyne* falls within neither of those categories, and because the *Alleyne* rule is not retroactive on collateral review, petitioner's motion was groundless. *Id.* In light of this clear precedent, the court denies petitioner's claim of actual innocence of brandishing a firearm.

<div align="center">**CONCLUSION**</div>

Based on the foregoing, the petition for a writ of *habeas corpus* is DENIED in its entirety. Petitioner has failed to state a plausible claim for ineffective assistance of counsel with respect to either his trial or appellate counsel. Petitioner has also failed to state a plausible claim that the court gave the jury improper jury instructions. Petitioner's claim that he is actually innocent for the sentence he received for brandishing a firearm is contrary to precedent in this

circuit.  Thus, no evidentiary hearing is warranted and the petition for a writ of *habeas corpus* is DISMISSED.

The clerk is respectfully directed to send a copy of this Memorandum and Order to the petitioner at his last known address and note service on the docket.

**SO ORDERED.**

Dated:    Brooklyn, New York
          December 30, 2019

                        _____/s/_____
                        Hon. Kiyo A. Matsumoto
                        United States District Judge